UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**MICHAEL E,**

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:22-cv-0042-TPK

OPINION AND ORDER

## OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) seeking review of a final decision of the Commissioner of Social Security.  That decision, issued by the Appeals Council on November 15, 2021, denied Plaintiff's applications for disability insurance benefits.  Plaintiff has now moved for judgment on the pleadings (Doc. 9), and the Commissioner has filed a similar motion (Doc. 11).  For the following reasons, the Court will **DENY** Plaintiff's motion, **GRANT** the Commissioner's motion, and direct the entry of judgment in favor of the Commissioner**.**

### I.  BACKGROUND

    Plaintiff protectively filed his application for benefits on February 27, 2019, alleging that he became disabled on June 29, 2018.  After initial administrative denials of his claim, a hearing was held before an Administrative Law Judge on May 18, 2020.  Plaintiff and a vocational expert, Dawn Blythe, both testified at the hearing.

    In a decision dated June 4, 2020, the Administrative Law Judge denied benefits.  He found, first, that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2023, and that he had not engaged in substantial gainful activity since his alleged onset date.  Next, he determined that Plaintiff had severe impairments including lumbar disc bulges status post decompression and fusion and asthma.  He also concluded, however, that those impairments, considered singly or in combination, did not meet or equal the level of severity required to qualify for disability under the Listing of Impairments.

    Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the sedentary exertional level but that he needed the option to sit and stand at will.  Further, Plaintiff could occasionally climb, balance, bend, stoop, kneel, crouch, twist and crawl.  Lastly, Plaintiff could not work at jobs where he would be exposed to concentrated airborne irritants such as fumes, odors, dusts, gases, and smoke.

Next, the ALJ determined that Plaintiff could not do his past relevant work as a nurse assistant, building maintenance laborer, or janitorial service supervisor.  However, the ALJ concluded that someone with this residual functional capacity and with Plaintiff's vocational profile could do certain unskilled, sedentary jobs including surveillance call out operator, telephone quotation clerk, and charge account clerk.  He also found that such jobs existed in significant numbers in the national economy.  As a result, the ALJ concluded that Plaintiff did not meet the requirements for disability under the Social Security Act.

In his motion for judgment on the pleadings, Plaintiff raises two issues, stated *verbatim* as follows:

> 1.  The Administrative Law Judge (ALJ) erred at step five, because the vocational expert's testimony revealed thee were not jobs in a significant number in the national economy that Plaintiff could perform.  The ALJ did not meet his burden at step five.  The numbers of jobs were below the required threshold.  This left the ALJ's step five finding unsupported by substantial evidence, and This error requires remand solely for calculation of benefits.
>
> 2.  The ALJ erred by failing to evaluate an opinion from Plaintiff's chiropractor.  This opinion was both supported by and consistent with the evidence, but the ALJ did not discuss it or account for it in the RFC.  This left the decision and residual functional capacity (RFC) not supported by substantial evidence.

Plaintiff's memorandum, Doc. 9-1, at 1.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff, who was 46 years old at the time of the hearing, first testified that he had been both a nurse assistant and a laborer at a nursing home.  He stopped working due to back problems, which began with an injury in 1999.  He had surgery at one point and was receiving physical therapy and chiropractic treatment, the latter of which had helped him until it was discontinued due to the pandemic.  His pain affected everything he did, including sitting for any prolonged period of time and sleeping.  He was able to do household chores like cooking but everything took longer than it used to.

Plaintiff also testified to having made an emergency room visit due to shortness of breath.  He did not think he had asthma, though, although he was told during that visit that he did.  he was given an inhaler to use if the event of future attacks.  When asked what he did on a regular basis, Plaintiff said that he made sure his children were up and ate breakfast before school, drove his children to school, rested, did chores, picked his children sup from school, and made dinner.  He could drive but not for more than half and hour at a time.

The vocational expert, Ms. Blythe, was asked questions about a person who could do only sedentary work with certain postural and environmental limitations. She agreed that such a person could not do any of Plaintiff's past jobs since they were all performed at the heavy exertional level. After identifying a number of jobs such a person could do, a sit-stand option was added to the hypothetical question being posed. In response, she said that the person could work as a car wash operator, telephone quotation clerk, or charge accounts clerk, and she gave numbers for those jobs as they existed in the national economy, which totaled slightly over 10,000 positions. Lastly, she testified that one absence per month was the maximum amount of absenteeism which would be tolerated.

### B. Medical Evidence

The relevant treatment records show the following. That evidence was accurately summarized in the ALJ's decision and can be briefly described as follows.

Plaintiff underwent lumbar fusion surgery in 2011. He worked for seven years after that date until sustaining another back injury. X-ray and MRI studies of the back showed, apart from the abnormalities associated with the surgery, only some bilateral stenosis and some disc bulging at L4-5. Most of Plaintiff's treatment consisted of chiropractic care, with some abnormal findings such as restricted range of motion and positive straight leg raising. The treatment records also indicated restrictions on Plaintiff's ability to sit for more than 30 minutes at a time.

### C. Opinion Evidence

On April 22, 2019, Plaintiff saw Dr. Dave for a consultative internal medicine examination. He told Dr. Dave that he had constant pain in the low back which was aggravated by various movements as well as prolonged sitting and driving. Aqua therapy had made his condition worse. On examination, Plaintiff had a normal gait, could walk on his heels and toes, and could rise from a chair without difficulty. There were restrictions on the extension and flexion of his lumbar spine. Dr. Dave diagnosed chronic low back pain and hypertension and thought Plaintiff had moderate to marked limitations for prolonged sitting, standing, repetitive crouching, heavy lifting, carrying, repetitive bending, and twisting through the lumbar spine. (Tr. 1790-92).

Two state agency reviewers expressed opinions about Plaintiff's residual functional capacity. The first, Dr. Ehlert, stated on May 8, 2019, that Plaintiff could do light work with some postural limitations. Dr. Wang expressed essentially the same opinion on September 18, 2019, except he concluded that Plaintiff had to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.

One of Plaintiff's treating chiropractors, Stephen Novelli, included some opinions in his chart notes made in 2017. On December 22, 2017, he reported that although Plaintiff was working full time, his condition had worsened since the date of the original injury in 1999 and that although he was 73% disabled he could return to work but without bending or lifting. He

repeated that restriction in a note dated five days later.

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

### IV.  DISCUSSION

#### A.  Step Five Determination

In his first claim of error, Plaintiff argues that the number of jobs identified by the vocational expert as being within Plaintiff's functional capability is "below the threshold of significant numbers" and that the Court should therefore remand the case solely for a calculation of benefits.  *See* Plaintiff's memorandum, Doc. 9-1, at 12.  Expanding on this argument, Plaintiff states that in this Circuit 9,000 jobs constitutes the number below which significant numbers of jobs do not exist.  Here, the vocational expert testified that among the three occupations she identified, there were approximately 11,262 positions available in the national economy.  Plaintiff then asserts, without further explanation of why this number is problematic even though it exceeds the 9,000 job threshold, that the ALJ erred in his finding that significant numbers of jobs exist which Plaintiff can perform.  In response, the Commissioner infers that Plaintiff's

argument is based on the idea that each separate job which is identified must exceed the numerical threshold for significant jobs, and counters that argument by noting that it is the total number of jobs that is the key consideration and not the number of each individual job titles that counts.

This recent statement from *Pichardo v. Comm'r of Soc. Sec.*, 714 F. Supp. 3d 183, 196 (E.D.N.Y. 2024) illustrates, in this Court's view, the proper way to understand the statutory requirement that "work" exists in significant numbers in the economy. In that case, the vocational expert identified three separate occupations in which the claimant could work, testifying that there were 7,000 jobs available as an addresser, 5,400 jobs available as a stuffer, and 1,000 jobs available as a polisher of eyeglass frames - a total of 13,400. The Plaintiff made contented that if that taken in isolation, none of these three occupations had at least 9,000 jobs available. The Court rejected that argument, stating:

> Here, there is no such reason to look at each of the occupations in isolation, as Plaintiff appears to ask this Court to do, because there is no argument that only one of the occupations presented by the VE properly accounted for the Plaintiff's RFC. As a result, the Court examines the available jobs in aggregate, as is the practice in other cases examining the number of jobs available in the national economy. *See Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 231 (N.D.N.Y. 2015) (analyzing the three occupations provided by the VE in aggregate).

Plaintiff has not cited a single case that has adopted a contrary approach. In fact, some of the cases cited by Plaintiff in his memorandum have clearly aggregated the number of jobs identified by the vocational expert in order to determine if the "significant work" threshold has been satisfied. *See, e.g., Sanchez v. Berryhill*, 336 F.Supp.3d 174 (W.D.N.Y. 2018) (determining that a total of 9,046 positions spread out among occupations like shipping and receiving weigher, counter clerk, table worker, and food and beverage order clerk constituted a significant number). For these reasons, there is no merit in this first claim of error.

### B. Chiropractic Opinion

Plaintiff's second claim of error relates to the ALJ's treatment of the opinion of one of Plaintiff's treating chiropractors. As noted above, the chiropractor twice expressed the opinion that Plaintiff should not be required to lift or bend. Plaintiff argues that the opinion was both supported by and consistent with the medical record, and that the ALJ's failure to consider it was harmful error. Plaintiff asserts that although this opinion was rendered prior to the alleged onset date, it is still relevant to the issue of disability, and that the ALJ was therefore required to weigh the opinion using the regulatory factors of consistency and supportability. Had he done so, according to Plaintiff, he would have found it persuasive and would have concluded that Plaintiff was unable to lift or bend. In the responsive memorandum, the Commissioner appears to concede that the ALJ did not weigh this opinion, but contends that the residual functional capacity finding was supported by the weight of the other medical evidence which the ALJ did

take into account, including the opinions of the consultative and state agency reviewers.

This Court has said the following about the legal effect of an ALJ's failure to discuss explicitly an opinion about functional capacity which is contained in the record:

> Although the applicable regulations state that an ALJ "will evaluate every medical opinion [he] receive[s,]" 20 C.F.R. § 416.927(c), "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the Court] to glean the rationale of an ALJ's decision[,]" *Cichocki v. Astrue,* 729 F.3d 172, 178 n.3 (2d Cir. 2013). "[F]ailure to discuss and/or weigh a medical opinion is not per se remandable error but may be found harmless error." *Sherry L. v. Comm'r of Soc. Sec.*, No. 20-CV-01432, 2022 WL 2180159, at *6 (W.D.N.Y. June 16, 2022) (collecting cases).

*Jessica Lynn J. v. Comm'r of Soc. Sec.*, 645 F. Supp. 3d 128, 134 (W.D.N.Y. 2022).

As was the case in *Jessica Lynn J.,* there is some question about whether the statements at issue actually constitute medical opinions. They do not say explicitly that Plaintiff could not lift or bend, but only that upon his return to work he should not be asked to do so because that might exacerbate his injury. To the extent they do, however, any error on the ALJ's part in not considering this evidence is clearly harmless. It should be noted that a chiropractor is not deemed to be an acceptable medical source, which does not mean, of course, that such opinions can be completely disregarded; rather, an ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03P, at *6. But where, as here, the ALJ has given persuasive weight to the opinions of acceptable medical sources, *i.e.* physicians, and explained why, it is extremely unlikely that had the ALJ specifically considered the chiropractic opinion - which, in full, concluded that Plaintiff was able to return to heavy labor even though he had some limitations on bending and lifting - he would have added complete restrictions on those activities to his residual functional capacity finding. He did, based on the evidence, restrict Plaintiff to sedentary work, meaning no lifting above ten pounds, and to occasional bending, so to some extent these limitations - limitations that preceded the alleged onset date - were incorporated into the functional capacity determination. The Court is persuaded that further consideration of this particular opinion would have had no impact on the ALJ's decision, and that a remand is therefore not warranted based on this claim.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 9), **GRANTS** the Commissioner's motion (Doc. 11), and **DIRECTS** the Clerk to enter judgment in favor of the Commissioner.

/s/ **Terence P. Kemp**
**United States Magistrate Judge**